UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

DEBORAH A. BATTLE,

                                        Plaintiff,

                    -vs-                                         13-CV-547-JTC

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

                                        Defendant.
_____

APPEARANCES:   LAW OFFICES OF KENNETH HILLER (JAYA ANN SHURTLIFF,
               ESQ., of Counsel), Amherst, New York, for Plaintiff.

               WILLIAM J. HOCHUL, JR., United States Attorney (DAVID BRENT
               MEYERS, Special Assistant United States Attorney, of Counsel),
               Buffalo, New York, for Defendant.

        This matter has been transferred to the undersigned for all further proceedings, by

order of Chief United States District Judge William M. Skretny dated August 6, 2014 (Item

15).

        Plaintiff Deborah A. Battle initiated this action on May 24, 2013, pursuant to the

Social Security Act, 42 U.S.C. § 405(g) ("the Act"), for judicial review of the final

determination of the Commissioner of Social Security ("Commissioner") denying plaintiff's

application for Social Security Disability Insurance ("SSDI") and Supplemental Security

Income ("SSI") benefits under Title II and Title XVI of the Act, respectively.  Both parties

have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of

Civil Procedure (see Items 8, 9).  For the following reasons, plaintiff's motion is denied, and

the Commissioner's motion is granted.

## BACKGROUND

Plaintiff was born on June 2, 1956 (Tr. 146).[1]  She filed applications for SSDI and SSI with a protective filing date of September 16, 2010, alleging disability due to arthritis, carpal tunnel syndrome, stomach issues, shoulder pain, hand pain, and ankle swelling, with an onset date of March 1, 2009 (Tr. 146-47, 207).   The applications were denied administratively on January 4, 2011 (Tr.  83-84).  Plaintiff requested a hearing, which was held on January 17, 2012 before Administrative Law Judge ("ALJ") David S. Lewandowski (Tr. 51-82).   Plaintiff appeared and testified at the hearing, and was represented by counsel.  Vocational expert ("VE") Jay Steinbrenner also appeared and testified.

On February 2, 2012, the ALJ issued a decision finding that plaintiff was not disabled within the meaning of the Act (Tr. 19-29).  Following the sequential evaluation process outlined in the Social Security Administration regulations (*see* 20 C.F.R. §§ 404.1520, 416.920), the ALJ found that plaintiff's impairments, while "severe," did not meet or medically equal any of the impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings")  (Tr. 25).  The ALJ discussed the evidence in the record, including plaintiff's hearing testimony and statements regarding her complaints of pain and functional limitations; reports from treating and consultative medical sources; and reports of diagnostic imaging, and determined that plaintiff had the residual functional capacity ("RFC") to perform light work[2] consistent with the exertional demands of her past relevant

---

[1]Parenthetical numeric references preceded by "Tr." are to pages of the administrative transcript filed by the Commissioner as part of the answer in this action (Item 7).

[2]Light work involves lifting no more than 20 pounds occasionally, 10 pounds frequently, standing and/or walking for six hours in an eight-hour work day and sitting six hours in an eight-hour work day. *See* 20 C.F.R. §§ 404.1567(b), 416.967(b); Social Security Ruling (SSR) 83-10. If someone can perform light

work as a counter attendant and hand packer (Tr. 25-29).  Relying on the VE's testimony indicating that an individual of plaintiff's age, education, work experience, and RFC would be able to perform the physical demands of these jobs, the ALJ determined that plaintiff has not been disabled within the meaning of the Act at any time since the alleged onset date (Tr. 28-29).

The ALJ's decision became the final decision of the Commissioner on March 25, 2013, when the Appeals Council denied plaintiff's request for review (Tr. 1-3), and this action followed.

In her motion for judgment on the pleadings, plaintiff contends that the Commissioner's determination should be reversed because the ALJ (1) failed to consider the effect of plaintiff's extreme obesity on her ability to perform work-related activities; (2) failed to discharge his affirmative duty to fully develop the record; and (3) failed to properly determine whether plaintiff's past work qualified as past relevant work.  *See* Items 8-1, 14. The government contends that the Commissioner's determination should be affirmed because the ALJ's decision was made in accordance with the pertinent legal standards and is based on substantial evidence.  *See* Items 9-1, 12.

## DISCUSSION

### I.    Scope of Judicial Review

The Social Security Act provides that, upon district court review of the Commissioner's decision, "[t]he findings of the Commissioner . . . as to any fact, if

---

work, we determine that they can also perform sedentary work unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.  *See* 20 C.F.R. §§ 404.1567(b), 416.967(b).

supported by substantial evidence, shall be conclusive …." 42 U.S.C. § 405(g). Substantial evidence is defined as evidence which "a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938), *quoted in Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Tejada v. Apfel*, 167 F.3d 770, 773-74 (2d Cir. 1999). The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts. *Giannasca v. Astrue*, 2011 WL 4445141, at *3 (S.D.N.Y. Sept. 26, 2011) (citing *Rodriguez v. Califano*, 431 F. Supp. 421, 423 (S.D.N.Y. 1977)).

Under these standards, the scope of judicial review of the Commissioner's decision is limited, and the reviewing court may not try the case *de novo* or substitute its findings for those of the Commissioner. *Richardson*, 402 U.S. at 401; *see also Cage v. Comm'r of Soc. Servs.*, 692 F.3d 118, 122 (2d Cir. 2012). The court's inquiry is "whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached" by the Commissioner. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982), *quoted in Hart v. Colvin*, 2014 WL 916747, at *2 (W.D.N.Y. Mar. 10, 2014).

However, "[b]efore the insulation of the substantial evidence test comes into play, it must first be determined that the facts of a particular case have been evaluated in the light of correct legal standards." *Klofta v. Mathews*, 418 F. Supp. 1139, 1411 (E.D.Wis. 1976), *quoted in Sharbaugh v. Apfel*, 2000 WL 575632, at *2 (W.D.N.Y. March 20, 2000); *Nunez v. Astrue*, 2013 WL 3753421, at *6 (S.D.N.Y. July 17, 2013) (citing *Tejada*, 167 F.3d at 773). "Failure to apply the correct legal standard constitutes reversible error, including, in certain circumstances, failure to adhere to the applicable regulations." *Kohler v. Astrue*,

546 F.3d 260, 265 (2d Cir. 2008) (citations omitted).   Thus, the Commissioner's determination cannot be upheld when it is based on an erroneous view of the law, or misapplication of the regulations, that disregards highly probative evidence.  *See Grey v. Heckler*, 721 F.2d 41, 44 (2d Cir. 1983); *see also Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987) ("Failure to apply the correct legal standards is grounds for reversal."), *quoted in McKinzie v. Astrue*, 2010 WL 276740, at *6 (W.D.N.Y. Jan. 20, 2010).

If the Commissioner's findings are free of legal error and supported by substantial evidence, the court must uphold the decision.  42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive, and where a claim has been denied ... the court shall review only the question of conformity with [the] regulations…."); *see Kohler*, 546 F.3d at 265.  "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force, [the court] will not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002).  Even where there is substantial evidence in the record weighing against the Commissioner's findings, the determination will not be disturbed so long as substantial evidence also supports it.  *See Marquez v. Colvin*, 2013 WL 5568718, at *7 (S.D.N.Y. Oct. 9, 2013) (citing *DeChirico v. Callahan*, 134 F.3d 1177, 1182 (2d Cir. 1998) (upholding the Commissioner's decision where there was substantial evidence for both sides)).

In addition, it is the function of the Commissioner, not the reviewing court, "to resolve evidentiary conflicts and to appraise the credibility of witnesses, including claimant." *Carroll v. Sec'y of Health and Human Services*, 705 F.2d 638, 642 (2d Cir. 1983); *cf.*

*Cichocki v. Astrue*, 534 F. App'x 71, 75 (2d Cir. Sept. 5, 2013).  "Genuine conflicts in the medical evidence are for the Commissioner to resolve," *Veino*, 312 F.3d at 588, and the court "must show special deference" to credibility determinations made by the ALJ, "who had the opportunity to observe the witnesses' demeanor" while testifying.  *Yellow Freight Sys. Inc. v. Reich*, 38 F.3d 76, 81 (2d Cir. 1994).

## II.    Standards for Determining Eligibility for Disability Benefits

To be eligible for SSDI or SSI benefits under the Social Security Act, plaintiff must present proof sufficient to show that she suffers from a medically determinable physical or mental impairment "which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months …," 42 U.S.C. § 423(d)(1)(A), and is "of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy …." 42 U.S.C. § 423(d)(2)(A); *see also* 20 C.F.R. §§ 404.1505(a), 416.905(a).  As indicated above, the regulations set forth a five-step process to be followed when a disability claim comes before an ALJ for evaluation of the claimant's eligibility for benefits.  *See* 20 C.F.R.§§ 404.1520, 416.920.  First, the ALJ must determine whether the claimant is presently engaged in substantial gainful activity.  If the claimant is not, the ALJ must decide if the claimant has a "severe" impairment, which is an impairment or combination of impairments that has lasted (or may be expected to last) for a continuous period of at least 12 months which "significantly limits [the claimant's] physical or mental ability to do basic work activities …." 20 C.F.R. §§ 404.1520(c),  416.920(c); *see also* §§ 404.1509, 416.909

(duration requirement).  If the claimant's impairment is severe and of qualifying duration, the ALJ then determines whether it meets or equals the criteria of an impairment found in the Listings.  If the impairment meets or equals a listed impairment, the claimant will be found to be disabled.  If the claimant does not have a listed impairment, the fourth step requires the ALJ to determine if, notwithstanding the impairment, the claimant has the residual functional capacity to perform his or her past relevant work.  If the claimant has the RFC to perform his or her past relevant work, the claimant will be found to be not disabled.  Finally, if the claimant is not capable of performing the past relevant work, the fifth step requires that the ALJ determine whether the claimant is capable of performing any work which exists in the national economy, considering the claimant's age, education, past work experience, and RFC.  *See Curry v. Apfel*, 209 F.3d 117, 122 (2d Cir. 2000); *Lynch v. Astrue*, 2008 WL 3413899, at *2 (W.D.N.Y. Aug. 8, 2008).

The claimant bears the burden of proof with respect to the first four steps of the analysis.  If the claimant meets this burden, the burden shifts to the Commissioner to show that there exists work in the national economy that the claimant can perform.  *Lynch*, 2008 WL 3413899, at *3 (citing *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999)).  "In the ordinary case, the Commissioner meets h[er] burden at the fifth step by resorting to the applicable medical vocational guidelines (the grids), … [which] take into account the claimant's residual functional capacity in conjunction with the claimant's age, education, and work experience."  *Rosa*, 168 F.3d at 78 (internal quotation marks, alterations and citations omitted).  If, however, a claimant has non-exertional limitations (which are not accounted for in the Grids) that "significantly limit the range of work permitted by h[er] exertional limitations then the grids obviously will not accurately determine disability

status …." *Bapp v. Bowen*, 802 F.2d 601, 605 (2d Cir. 1986) (internal quotation marks and citation omitted).  In such cases, "the Commissioner must 'introduce the testimony of a vocational expert (or other similar evidence) that jobs exist in the national economy which claimant can obtain and perform.' " *Rosa*, 168 F.3d at 78 (quoting *Bapp*, 802 F.2d at 603).

## III.    The ALJ's Disability Determination

In this case, ALJ Lewandowski determined at step one of the sequential evaluation that plaintiff had not engaged in substantial gainful activity since March 1, 2009, the alleged onset date (Tr. 24).  At steps two and three, as indicated above, the ALJ found that plaintiff did not have an impairment or combination of impairments that meets or equals the severity of any of the impairments in the Listings (Tr. 24-25).  At step four, the ALJ discussed the evidence of record, including plaintiff's testimony and statements regarding the functional limitations caused by her pain and other symptoms, reports of diagnostic imaging and studies, and reports of treating and consulting medical sources (Tr. 25-28). Based on his assessment of this evidence, the ALJ found that plaintiff had the RFC to perform light work, with certain additional functional limitations related to frequent handling, fingering, bilateral reaching at shoulder level and overhead, kneeling, crouching, and crawling (Tr. 25), consistent with the exertional demands of her past relevant work as a counter attendant and hand packer (Tr. 25-29).  Accordingly, the ALJ concluded the sequential evaluation at step four, finding that plaintiff was not disabled within the meaning of the Act.

IV.     **Plaintiff's Motion**

A.     **Obesity**

Plaintiff contends that the Commissioner's determination must be reversed because the ALJ did not consider the effect of plaintiff's obesity at any stage of the sequential evaluation.   The court initially notes that plaintiff did not allege obesity as a disabling condition in her application for benefits (Tr. 146-47, 207), at her hearing (*see* Tr. 59), or in her brief to the Appeals Council (*see* Tr. 7-8).   "Nevertheless, an ALJ may have a duty to consider the impact of a claimant's obesity even where he or she does not identify it as a limiting condition."   *Thompson v. Astrue*, 2013 WL 265239, at *3 (W.D.N.Y. Jan. 23, 2013).

Social Security Ruling ("SSR") 02–1p explains that the Social Security regulations "consider obesity to be a medically determinable impairment and remind adjudicators to consider its effects when evaluating disability.  The provisions also remind adjudicators that the combined effects of obesity with other impairments can be greater than the effects of each of the impairments considered separately."  SSR 02–1p, 2002 WL 34686281 (S.S.A. Sept. 12, 2002).  Thus, where the record contains evidence indicating limitation of function due to obesity, the ALJ must consider the effect of obesity on the claimant's ability to do basic work activities at steps two through four of the sequential evaluation process.  *See Sotack v. Astrue*, 2009 WL 3734869, at *4-5 (W.D.N.Y. Nov. 4, 2009) (where record contains evidence of obesity and limiting effects, ALJ is required to consider its impact even if claimant did not allege obesity as an impairment).  "Conversely, the ALJ's obligation to discuss a claimant's obesity alone, or in combination with other impairments, diminishes where evidence in the record indicates the claimant's treating or examining sources did not

consider obesity as a significant factor in relation to the claimant's ability to perform work related activities." *Farnham v. Astrue*, 832 F. Supp. 2d 243, 261 (W.D.N.Y. 2011) (citing *Rockwood v. Astrue*, 614 F. Supp. 2d 252, 276 (N.D.N.Y. 2009) (no error where ALJ fails to specifically discuss obesity at steps two and three, when the record provides no evidence the claimant is limited in basic work activities due to obesity; citing cases); *see also Pokluda v. Colvin*, 2014 WL 1679801, at *8-9 (N.D.N.Y. Apr. 28, 2014) (ALJ not required to consider impact of obesity where claimant did not allege obesity as an impairment, and no medical source diagnosed obesity as a distinct medical condition or found obesity to be a significant factor relative to claimant's ability to perform basic work activities); *Thompson*, 2013 WL 265239, at *3 (notwithstanding clear evidence of claimant's obesity, ALJ has no duty to consider obesity as an impairment or a contributing factor where record is "devoid of any suggestion that her weight negatively impacted her ability to work.").

    In this case, the record reflects that plaintiff's treating and consultative examining medical sources were aware of plaintiff's obesity, but there is no indication that any medical source attributed any symptoms, limitations of function, or exacerbation of other impairments to her weight.  For example, Dr. Gabriel Chouchani, M.D., performed pelvic laparotomy and hernia repair surgery on plaintiff at Sisters Hospital on August 13, 2010 (*see* Tr. 340-46).  During pre-operative consultation and routine gynecological examination, Dr. Chouchani noted that plaintiff appeared "morbidly obese" (Tr. 352), but no physical restrictions or functional limitations were indicated (Tr. 347-48, 351-53).  On October 4, 2010, upon six-week post-operative follow-up examination, Dr. Chouchani reported that

plaintiff showed no signs of apparent distress, and he cleared plaintiff for "return to light work in 2 weeks" with no heavy lifting (Tr. 335).

On December 2, 2010, Dr. John Schwab, D.O., performed a consultative internal medicine examination of plaintiff (Tr. 373-76).  Plaintiff complained of bilateral wrist pain caused by carpal tunnel syndrome, as well as constant pain from osteoarthritis in her knees, feet, shoulders, and back (Tr. 373).  On examination, Dr. Schwab noted that plaintiff was 5' 4" tall and weighed 217 pounds (Tr. 374).  She appeared to be in no acute distress, but she limped favoring the right leg when walking and appeared unable to walk on her heels without difficulty (Tr. 374).  However, she was able to squat fully, had a normal stance, and needed no assistive devices or help changing for the exam, getting on and off the exam table, or rising from a chair (Tr. 374).  Dr. Schwab reported otherwise normal findings, with no musculoskeletal, neurological, or fine motor activity restrictions (Tr. 375). Dr. Schwab diagnosed a history of bilateral carpal tunnel syndrome, osteoarthritis in several joints, history of a right mastectomy, and tobacco abuse, and in his medical source statement he reported "[n]o restrictions based on [the] findings of today's examination" (Tr. 376).

Notably, during the hearing before the ALJ, plaintiff was not questioned by her attorney about any specific functional limitations relating to obesity, nor did she allege obesity as a disabling impairment or include obesity as a factor limiting her ability to work in any of the disability reports submitted in association with her claim (*see* Tr. 160-69, 178-87, 207, 216, 220, 222, 225).

Based on this review, the court finds the record devoid of any indication from a medical source that plaintiff's obesity has negatively impacted her ability to perform work-

related activities, and accordingly, finds that the ALJ's sequential evaluation in this case satisfied the requirements of SSR 02-01p regarding proper consideration of evidence of obesity.

### B.      Development of the Record

It is a well-established rule in the Second Circuit "that the social security ALJ, unlike a judge in a trial, must on behalf of all claimants … affirmatively develop the record in light of the essentially non-adversarial nature of a benefits proceeding." *Lamay v. Comm'r of Soc. Sec.*, 562 F.3d 503, 508–09 (2d Cir. 2009) (internal quotation marks, alterations, and citation omitted), *cert. denied*, 559 U.S. 962 (2010); *accord Tejada v. Apfel*, 167 F.3d 770, 774 (2d Cir. 1999).  Under this rule, "where there are deficiencies in the record, an ALJ is under an affirmative obligation to develop a claimant's medical history even when the claimant is represented by counsel …." *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999) (internal quotation marks omitted).  On the "flip-side" of this same proposition, "where there are no obvious gaps in the administrative record, and where the ALJ already possesses a complete medical history, the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim." *Petrie v. Astrue*, 412 F. App'x 401, 406 (2d Cir. 2011) (internal quotation marks omitted).

Plaintiff contends that the ALJ failed to discharge his duty to affirmatively develop the record by obtaining a medical source assessment of plaintiff's functional limitations, and instead relied on his own interpretation of the x-rays and other raw medical data in finding plaintiff's RFC to be consistent with light work.  However, the court's review of the record reveals that, in making his RFC assessment, the ALJ accurately referenced medical

source reporting of the results of plaintiff's x-rays, nerve conduction studies, and other diagnostic data.  For example, the ALJ indicated his reliance on Dr. Schwab's opinion that plaintiff revealed "no restrictions" upon consultative internal medicine examination, and specifically noted Dr. Schwab's review of the reports of radiologist Lawrence Liebmann, M.D., who interpreted contemporaneous x-rays of plaintiff's right knee and right shoulder as indicating degenerative joint disease in the acromioclavicular (AC) joint of the right shoulder and degenerative joint disease of the right knee (*see* Tr. 27, 376-78).  The ALJ also accurately referenced reports of x-rays of plaintiff's right knee and right hip performed on April 13, 2011, both of which revealed "mild degenerative changes" but "no acute abnormality" (Tr. 27, 414-15).

In addition, as discussed in greater detail above, the ALJ properly relied on the assessments of the consultative examiner, and plaintiff's treating physician Dr. Chouchani, in concluding that plaintiff could perform a reduced range of light work.  Dr. Chouchani examined plaintiff on several occasions both prior and subsequent to her August 2010 surgery, and cleared plaintiff to return to light work in October 2010.  Dr. Schwab, who examined plaintiff in December 2010, reported no functional limitations.  Based on the consistent findings of these treating and consultative medical sources, and the ALJ's detailed consideration of the objective medical evidence of record as a whole, the court finds that the ALJ possessed a complete medical history in assessing plaintiff's RFC for light work with frequent handling, fingering, bilateral reaching up to shoulder level, kneeling, crouching, and crawling, and occasional bilateral overhead reaching (Tr. 25), and was under no obligation to seek further input from medical sources prior to his denial of plaintiff's applications for SSDI and SSI benefits.

**C.      Past Relevant Work**

Finally, plaintiff contends that the ALJ erred at step four of the five-step evaluation process in finding that plaintiff's work as a counter attendant qualified as past relevant work, and that the ALJ mischaracterized the vocational expert's testimony in finding that plaintiff could perform her past relevant work as a hand packer.  These contentions are also rejected.

As explained by the ALJ in his written decision:

> The term past relevant work means work performed (either as the claimant actually performed it or as it is generally performed in the national economy) within the last 15 years or 15 years prior to the date that disability must be established.  In addition, the work must have lasted long enough for the claimant to learn to do the job and have been SGA [substantial gainful activity].

Tr. 24 (citing 20 C.F.R. §§ 404.1560(b), 404.1565, 416.960(b), and 416.965; *see also* 20 C.F.R. §§ 404.1574, 416.974 (guidelines for determining SGA)).  The ALJ determined that, based on the vocational expert's testimony regarding the exertional and skill levels of plaintiff's past work as a hand packer and cafeteria counter attendant, as listed in the U.S. Department of Labor Dictionary of Occupational Titles ("DOT") (*see* Tr. 78), an individual of plaintiff's age with similar education, work experience, and functional limitations would be capable of performing the counter attendant job as performed generally, and the hand packer job as performed by plaintiff (Tr. 28-29).

The court's review of the present record reveals substantial evidence to support this determination.  For example, in the "Work History" section of her benefits applications, plaintiff reported that she performed at least six different hand packer positions on a full-

time basis during the relevant 15 year period (*see* Tr. 170-76, 188-94, 208).  The record further reflects that plaintiff worked as a packer at Westwood Squibb on a full-time basis for approximately eight years from 1994 through 2001, at the reported hourly rate of $10.69 (Tr. 208; *see also* Tr. 56-58, 156).  These facts provide a substantial basis both for the ALJ's determination that plaintiff's performance of the hand packer job qualifies as past relevant work under the regulations and guidelines cited above, and for the vocational expert's opinion that this work was performed by plaintiff at an exertional level consistent with the functional limitations outlined by the ALJ in his RFC assessment (see Tr. 78).

Accordingly, the court finds no reversible error on the part of the ALJ, and substantial evidence to support his determination, at step four of the sequential evaluation.

## CONCLUSION

For the foregoing reasons, the court finds that the ALJ's decision is based on correct legal standards and supported by substantial evidence, and the Commissioner's determination must therefore be upheld.  Accordingly, plaintiff's motion for judgment on the pleadings (Item 8) is denied, the Commissioner's motion for judgment on the pleadings (Item 9) is granted, and the case is dismissed.

The Clerk of the Court is directed to enter judgment in favor of the Commissioner, and to close the case.

So ordered.

\s\ John T. Curtin
JOHN T. CURTIN
United States District Judge

Dated: October 8, 2014